UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
:
**ALAN GIORDANI**,
:
                        Plaintiff,         :
:   **MEMORANDUM DECISION AND**
           – against –           :  **ORDER**
:
:   22-CV-642 (AMD) (LB)
**U.S. DEPARTMENT OF JUSTICE**, *et al.*,  :
:
                        Defendants.  :
------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

       Before the Court are motions to dismiss the complaint filed by defendants Paul Giordani and the Department of Justice, respectively. For the reasons explained below, the complaint is dismissed in its entirety.

       The plaintiff, an attorney proceeding *pro se*,[1] alleges a sprawling, years-long conspiracy involving his brother, their mother's deceased attorney, elements of organized crime and nearly every governmental institution with any jurisdiction over Queens County, to dispossess him of his late mother's house. (ECF No. 2 ¶¶ 2-4.) According to the plaintiff, the conspiracy implicates corrupt city officials—many of them deceased—beholden to the so-called Queens Democratic political machine, who allowed an illegal zoning variance to diminish the value of his mother's property for years, as well as officials at the highest levels of both state and federal government. (*Id.* ¶¶ 12, 29, 54, 57, 61.)

       The plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for violations of the Fifth and Fourteenth Amendments, and names as defendants the United States Department of Justice, the New

---

[1] While typically a federal court must "liberally construe[]" pleadings by *pro se* parties, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), that standard does not apply where the *pro se* litigant is an attorney. *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).

York State Attorney General and the City of New York ("Government Defendants"), as well as his brother, Paul, the Law Offices of John T. Landers and Horwin Realty Inc. (the "Private Defendants"). (*See* ECF No. 1 at 1-4; ECF No. 2.)[2]

## BACKGROUND[3]

In his 47-page, single-spaced complaint, the plaintiff describes two distinct disputes. The first concerns the validity of a will his mother executed in 2002 and subsequent probate proceedings. (ECF No. 2 ¶¶ 23, 25.) The second centers on what the plaintiff describes as an illegal zoning variance stemming from the operation of a beer garden near his mother's home and the failure of government officials to enforce zoning ordinances against the commercial interests behind the beer garden. The plaintiff alleges that the zoning violation diminished the value of his mother's property by approximately $150,000. (*Id.* ¶¶ 2, 11.)

### I. The Probate Dispute

The plaintiff's mother, Nancy Giordani, lived at 82-14 60th Road in Queens until her death on May 13, 2017. (*Id.* ¶ 4.) Nancy had four children—the plaintiff, Paul, Anthony and Mary. (*Id.* ¶ 4.) The surviving family is estranged: the plaintiff "has not been in contact with his sister for years," claims that Paul has an "underlying violent temperament" and that Paul and his legal counsel obtained a "questionable" waiver from Mary, who "may suffer from some form of incapacity or mental illness, or derangement," and that Mary "would not be well served through any large endowment that would further her dissolute lifestyle." (*Id.* ¶¶ 35-36, 42, 113.) The

---

[2] In a handwritten addendum to the complaint coversheet, the plaintiff lists the address of Greenfield, Stein & Senior LLP, counsel to Paul Giordani. It is unclear whether he intended to name the firm as a defendant or merely included their address for the purpose of service. Since the plaintiff does not name the firm in his complaint, the Court assumes it is not a defendant in this action, and maintains that its inclusion on the docket was an error.

[3] To date, the plaintiff has not filed an amended complaint. Accordingly, the facts in this background section are largely duplicative of those recounted in my February 14, 2022 order denying the plaintiff's request for a temporary restraining order. (*See* ECF No. 5.)

plaintiff asserts that he gave their mother "the best care, and protection available to her," that he "was the sole provider of these efforts" and that "Paul was never a part of the testatrix['s] daily, weekly or even long-term planning, that was required in [their] mother's best interests and welfare." (*Id.* ¶¶ 41, 87-88.)

The plaintiff claims that Paul, Nancy's lawyer, John Landers—whose law office is named as a defendant—and Ann Landers—who is not named as a defendant—conspired to intimidate and manipulate the plaintiff's mother into executing a new will in 2002, and fraudulently disrupted the plaintiff's estate planning for his mother. (*See id.* ¶¶ 14-16, 21, 25-28, 37-39, 42, 78-101, 109-119, 141-42, 154.) John Landers died in 2012. (ECF No. 16-1 at 8.) Paul subsequently commenced a proceeding to probate the 2002 will in the New York Surrogate's Court, Kings County, Index No. 2020-2293. (*Id.* ¶ 1.) Those proceedings are currently in the discovery stage. (ECF No. 33 at 2.) The plaintiff maintains that the "decedent's intention to gift the subject property to her son Alan, is manifest in her 2009 and 2010 hand signed letters, discovered in the past year." (ECF Nos. 2 ¶ 21; 1-1 at 10-11.) He asserts that the Surrogate's Court is constrained by New York's statutory provisions and jurisdictional limitations, (ECF No. 2 ¶¶ 102, 110, 131, 158), and argues that the court is plagued by "nepotism" and "hostil[ity]." (*Id.* ¶ 125.) The plaintiff claims that "the fraudulent circumstances" of the "manipulations" of the 2002 instrument provide a basis for this Court's "jurisdictional claim" that is "superior" to the Surrogate's Court's jurisdiction over the probate matter. (*Id.* ¶¶ 91-93.)

## II. The Zoning Dispute

The plaintiff attempts to connect the probate matter with a purported zoning variance conspiracy from the 1990s involving government officials, various commercial parties and the Resurrection Ascension Church. (*Id.* ¶¶ 2, 95.) The plaintiff alleges that the "illegal variance," which reduced the value of his mother's property, amounts to an unconstitutional taking. (*Id.* ¶¶

3

9, 11, 18-19, 49.) He claims that the City of New York, the Law Offices of John T. Landers and Horwin Realty were involved in this scheme. (*Id.* ¶¶ 12, 27, 47, 71-76, 83-85, 95-96, 120-121, 172-74.) He further alleges that John Landers once worked at the Queens County District Attorney's Office, and "maintained a quasi-governmental/private sector relationship as an operative" in a scheme with "New York City Hall and One police plaza" and "Queens County government officials under color of authority of law." (*Id.* ¶¶ 47, 54, 120, 173-74.) The plaintiff claims that John Landers represented the Resurrection Ascension Church, and had a conflict of interest in representing his mother. (*Id.* ¶¶ 95-97.) He asserts that the New York State Attorney General was responsible for oversight of the Queens County District Attorney's Office and the State Liquor Authority, (*id.* ¶ 71, 74), but does not explain how either entity is related to the probate proceeding or the property dispute.

The plaintiff litigated the Queens property issues in a 1997 action in the New York Supreme Court, Queens County, *see Giordani v. Horwin Realty Co.*, Index No. 15667/1997 (N.Y. Sup. Ct. July 22, 1997),[4] and then in a civil action that the plaintiff filed in the United States District Court for the Southern District of New York after the New York court rejected his claim. (*Id.* ¶¶ 4-5); *see In re Alan Giordani*, No. 18-CV-3112 (S.D.N.Y.). In the Southern District, the plaintiff challenged the state court decision, asserting a Fourth Amendment claim for illegal seizure and a Fifth Amendment claim for unconstitutional takings, among other things. Then-Chief Judge Colleen McMahon dismissed the case, finding that the plaintiff's claim was barred by the *Rooker-Feldman* doctrine, and that the plaintiff did not have standing to bring the

---

[4] The plaintiff maintains that the state court addressed only a vacant lot near the plaintiff's mother's home and not an adjacent alleyway, which is subject to an easement belonging to his mother's property. (ECF No. 9 at 2.) The plaintiff does not, however, explain why claims arising from the improper use of the alleyway are not barred by the doctrine of *res judicata*. In any event, this Court would not have subject matter jurisdiction over any nuisance or trespass claims brought against non-state actors. *See* 28 U.S.C. §§ 1331, 1332.

4

case because he did not name any individual defendants or assert personal injuries. *See Giordani*, No. 18-CV-3112, ECF No. 7 (S.D.N.Y. Jun. 25, 2018). The Second Circuit dismissed the plaintiff's appeal. *See id.*, ECF No. 13 (S.D.N.Y. Mar. 7, 2019).

In his complaint, the plaintiff argues that then-Chief Judge McMahon and the Court of Appeals were wrong and that their decisions were procedurally flawed. (ECF No. 2 ¶¶ 52-53, 55-59, 63, 65, 147-48.) He asserts that the Southern District uses an "unconstitutional intake system, that impedes or delays the rights to petition for redress of grievances [in] appearing to ministerially send all Pro Se matters to the same Chief Judge." (*Id.* ¶ 58.) The only allegations against the United States Department of Justice are related to the 2018 case before Judge McMahon. (*Id.* ¶¶ 55, 57, 61-62.)

## III. Procedural History

In the caption, the plaintiff names the United States Department of Justice, New York State, the City of New York, the Law Offices of John T. Landers, Paul Giordani, and Horwin Realty Inc. as defendants. (ECF No. 2)[5] The plaintiff also names the New York State Attorney General as a defendant in the coversheet to his complaint. (ECF No. 1 at 3.) His claims against New York State appear to be directed at the Attorney General's Office. (ECF No. 2 ¶¶ 71, 74.) The plaintiff makes claims under the Fifth and Fourteenth Amendments, but it is not clear against which defendants he asserts which claims. (*Id.* ¶¶ 1, 49.)[6] First, he argues that delay by

---

[5] The plaintiff refers to the former U.S. Attorney for the Southern District of New York—Geoffrey Berman—at various points in the complaint, but as the Department of Justice points out, the plaintiff does not name Mr. Berman as a defendant. (ECF No. 12 at 3 n.1.)

[6] Although the plaintiff refers to the First Amendment right to petition the government, he does not articulate a coherent First Amendment claim. (ECF No. 2 ¶ 43.) To the extent the plaintiff means to raise First Amendment claims, they are dismissed. *Mclean v. Cnty. of Westchester*, No. 17-CV-4492, 2018 WL 6329420, at *10 (S.D.N.Y. Dec. 3, 2018) (dismissing claims under the First, Fifth, Sixth and Fourteenth Amendments when it was "entirely unclear which of [the plaintiff's] rights under those Amendments he alleges were violated and how the [cause] of action is distinct from the Plaintiff's other claims"); *Ellison v. Evans*, 13-CV-885, 2013 WL 5863545, at *4 n.8 ("Though plaintiffs reference the

5

various government agencies in addressing his various probate and zoning grievances constitutes "a defacto taking that unjustly enriched others, at the expense and legal detriment of the Estate, its heirs and beneficiaries." (*Id.* at 43-44.) Second, the plaintiff asserts that he was denied the right to Equal Protection under the Fourteenth Amendment, as "a disfavored member of this demographic" including "people like the Plaintiff, his late mother[], and neighbors, who maintained traditional attitudes, world views and religious ethos and perspectives." (*Id.* at 44.)

The plaintiff seeks various forms of both equitable and monetary relief, including compensatory and monetary damages as well as a temporary restraining order to halt the issuance of Letters Testamentary in a pending proceeding in the New York Surrogate's Court, Kings County. In addition, the plaintiff also asks the Court to evaluate the capacity of his sister, who is not a party to this action, and demands the unsealing of his brother Paul's criminal records. (*Id.* at 46.) Finally, the plaintiff asks this Court to secure an out-of-state annuity, and to award unspecified damages and attorney's fees. (*Id*. ¶¶ 31-32, 156.)

On February 14, 2022, the Court denied the plaintiff's request for a TRO on the basis of the *Younger* abstention doctrine, which prohibits federal courts from intervening in state court proceedings. (ECF No. 5 at 6-7.) The Court dismissed the portion of the complaint challenging the New York Surrogate's Court proceeding involving the probate of his mother's estate. (*Id.* at 8.) Finally, the Court directed the plaintiff to file a status report by March 1, 2022 informing the court whether he intended to proceed with the action or file an amended complaint. (*Id.*)

The plaintiff did not respond to the Court's directive. Instead, on March 1, the plaintiff filed a 12-page, single-spaced letter disputing the Court's decision. (ECF No. 9.) He argued that

---

First Amendment right to petition the government and access to the courts at various points in the complaint, the Court also finds these bare allegations insufficient to survive the instant motion to dismiss." (internal citation omitted)).

6

"the District Court has not yet understood the underlying dynamic ramifications presented within the February 4, 2022 submission," and urged the Court to "immediately reverse itself" and "restore this matter completely." (ECF No. 9 at 7, 12.) The plaintiff argues that Court misapplied the *Younger* doctrine when it partially dismissed his claims on February 14, 2022. According to the plaintiff, *Younger* abstention does not preclude this Court's exercise of jurisdiction over his challenge to the validity of his mother's will. The plaintiff theorizes that even if the Surrogate Court were to void his mother's will on the basis of fraud, that court would apply New York State intestacy law and distribute the assets of his mother's estate on a *per stirpes* basis, which would result in his mother's estate being divided equally among all of her living children. In the plaintiff's view, that result would be a "Pyrrhic" victory because his mother's will—which the plaintiff seeks to invalidate—also contemplates a *per stirpes* distribution. (*Id.* at 6.) In other words, the result the plaintiff seeks—excluding his siblings from inheriting anything—cannot be achieved in state court.

The plaintiff further posits that the Court "appears to have exercised a subliminal bias and prejudice," and did not draw a distinction between "two separate distinct property tracts" that were implicated by the allegedly illegal zoning variance. (*Id.* at 11.) The plaintiff requested an "inquest proceeding before a District Court magistrate." (*Id.* at 8.)

In an April 26, 2022 letter, the plaintiff requested leave to file an amended complaint "to the extent greater amplification and clarity in the pleadings are required." The plaintiff offered no additional explanation, and did not include a proposed amended complaint and memorandum of law, as required by Rule 7.1(a) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. (ECF No. 15 at 2.)

7

On May 9, 2022, the Department of Justice and Paul Giordani filed separate motions to dismiss the plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. (ECF Nos. 12 at 1, 16 at 1.)

**LEGAL STANDARD**

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate" the claim. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Rule 12(b)(6) dismissal is warranted when the complaint does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Specifically, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court reviewing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6) must accept as true the complaint's factual allegations and draw all reasonable inferences in the non-moving party's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

The plaintiff bears the burden of proving that subject matter jurisdiction exists, *Makarova*, 201 F.3d at 113, and the defendants must establish that dismissal under Rule 12(b)(6) is warranted, *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), *abrogation on other grounds recognized by Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 94 (2d Cir. 2019).

Courts considering a motion to dismiss pursuant to Rule 12(b)(6) may rely only on the complaint itself, documents attached to the complaint or incorporated by reference and documents upon which the complaint relies. *Targum v. Citrin Cooperman & Co., LLP*, No. 12-

8

CV-6909, 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). "Allegations in the complaint that are contradicted by more specific allegations or documentary evidence are not entitled to a presumption of truthfulness." *Id.* (internal quotation marks and citations omitted).

## DISCUSSION

### I. Subject Matter Jurisdiction

The Court does not have subject matter jurisdiction over the plaintiff's claims against the Department of Justice and the New York State Attorney General, and dismissal of both these defendants is required. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) ("A complaint will be dismissed as frivolous when it is clear that the defendants are immune from suit.").

### a. Sovereign immunity shields the Department of Justice from the plaintiff's claims.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also Chapman v. U.S. Dep't of Just.*, 558 F. Supp. 3d 45, 49 (E.D.N.Y. 2021) ("It is well established that "the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." (quoting *U.S. v. Mitchell*, 463 U.S. 206, 212 (1983))). Because the Department of Justice is a federal agency, and because Congress has not expressly and unequivocally consented to suit for constitutional violations, I must dismiss all of the plaintiff's claims against the Department of Justice. *See Chapman*, 558 F. Supp. 3d at 50 (dismissing a plaintiff's claims alleging that the DOJ failed to "investigate injustices within the family court and foster care systems" for lack of

9

subject matter jurisdiction because a plaintiff "may not maintain an action against the DOJ, a federal agency, for allegedly violating his constitutional rights.").[7]

### b.  The Eleventh Amendment bars suit against New York State.

The plaintiff's claims against New York State and the New York State Attorney General are barred by the Eleventh Amendment. The Eleventh Amendment "bar[s] federal suits against state governments by a state's own citizens." *Woods v. Rondout Valley Central Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006); *see also KM Enters., Inc. v. McDonald*, 518 F. App'x 12, 13 (2d Cir. 2013) ("As a general matter, states enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law."); *Boyland v. Wing*, 487 F. Supp. 2d 161, 180 (E.D.N.Y. 2007). This bar precludes "suits that seek either money damages, or injunctive relief" against the state. *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001) (internal citations omitted). Moreover, Eleventh Amendment immunity extends "beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Woods*, 466 F.3d

---

[7] Even if the plaintiff's claims against the Department of Justice were not barred by sovereign immunity, dismissal would still be warranted pursuant to Federal Rule of Civil Procedure 12(b)(6) because the complaint fails to state a constitutional tort claim pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The plaintiff alleges that the Department of Justice failed to "timely investigate, review, schedule, or litigate" the dismissal of his 2018 action in the Southern District of New York. (ECF No. 2 ¶¶ 61, 62.) However, "there is no constitutional right to an investigation." *Longi v. New York*, No. CV-02-582, 2006 WL 8441210, at *24 (E.D.N.Y. June 26, 2006) (dismissing *Bivens* claims against FBI officials who failed to investigate plaintiff's complaint of fraud), *aff'd*, 363 F. App'x 57 (2d Cir. 2010); *Faccio v. U.S. Dep't of Hous. & Urb. Dev.*, 442 F. App'x 599, 600 (2d Cir. 2011) (failure by HUD officials to investigate plaintiff's discrimination complaint "did not suggest a violation of any of his constitutional rights cognizable as a *Bivens* claim"). In a letter dated April 16, 2022, the plaintiff argues his claims against the Department of Justice are not predicated on its failure to investigate his mother's probate dispute, but the "failure of S.D.N.Y.[] to upload or otherwise transfer the Court file from the 500 Pearl Street location of S.D.N.Y., Intake or District Court location across to the Second Circuit at 40 Foley Square," which somehow prejudiced the appeal of his 2018 action. (ECF No. 15 at 2.) The U.S. Attorney does not "maintain the oversight of the District Court"—an entirely separate branch of government. Any claim against the United States District Court for the Southern District of New York is plainly barred by absolute judicial immunity. *Jones-Bey v. Chen*, No. 21-CV-6142, 2021 WL 4255056, at *5 (S.D.N.Y. Sept. 17, 2021).

10

232 at 236 (internal quotation marks and citations omitted); *see also Walker v. City of Waterbury*, 253 F. App'x 58, 60 (2d Cir. 2007) (summary order) (Eleventh Amendment immunity applies to state agencies); *see also Corrado v. N.Y. Office of Temp.*, No. 15-CV-7316, 2016 WL 3181128, at *3 (E.D.N.Y. June 2, 2016).[8]

The Office of the Attorney General "is unquestionably an arm of the State of New York for purposes of Eleventh Amendment immunity." *Rivera v. United States Citizenship & Immigr. Servs.*, No. 19-CV-3101, 2020 WL 4705220, at *9 (S.D.N.Y. Aug. 12, 2020). Furthermore, "New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983." *Jones-Bey*, 2021 WL 4255056, at *6. Accordingly, the plaintiff's claims against New York State and the Attorney General's Office are dismissed for lack of subject matter jurisdiction.

## II. Failure to State a Claim

While the Court can properly exercise subject matter jurisdiction over the plaintiff's constitutional claims against the Private Defendants and the City of New York, dismissal of these claims is warranted pursuant to Federal Rule of Civil Procedure 12(b)(6) because the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### a. The plaintiff does not allege the Private Defendants acted "under color of law."

---

[8] To date, neither New York State nor New York City has appeared in this action. The plaintiff claims that he served them, but he has never filed proof of service. To the extent the plaintiff did not properly serve the City and State, the claims against these entities should be dismissed pursuant to Federal Rule of Civil Procedure 4(m). Regardless, the plaintiff's failure to establish subject matter jurisdiction with respect to his claims against the state mandates dismissal. "Lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the court *sua sponte*." *Herbert v. Devito*, No. 18-CV-5287, 2018 WL 4845737, at *2 (E.D.N.Y. Oct. 4, 2018).

11

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). "[T]o state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was 'committed by a person acting under the color of state law.'" *Harrison v. New York*, 95 F. Supp. 3d 293, 321 (E.D.N.Y. 2015) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

The plaintiff does not plausibly allege that the Private Defendants—none of whom are state actors—acted under color of state law to deprive the plaintiff of his constitutional rights. "While it is clear that private individuals are not state actors, such individuals can be liable for civil rights violations under Section 1983 if they have conspired, or engaged in joint activity with state actors." *Stewart v. Victoria's Secret Stores*, LLC, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012). "Such collaboration is stated only if a plaintiff can plead more than conclusory allegations or naked assertions. Thus, pleadings asserting joint activity must allege specific facts tending to show agreement and concerted action." *Id.* (citing *Bacquie v. City of New York*, 99-CV-10951, 2000 WL 1051904, at *1). "Similarly, stating a Section 1983 conspiracy claim against a private individual requires more than pleading simply, and in conclusory fashion that the defendant 'conspired' with state actors. Instead, the plaintiff must allege: (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id.* (citing *Ciambriello v. Cnty. of Nasssau*, 292 F.3d 307, 324-45 (2d Cir. 2002)).

The plaintiff has not pleaded with the requisite specificity or anything approaching plausibility the existence of any agreement or conspiracy involving the Private Defendants and

state actors, notwithstanding repeated references to "nefarious dealing," a "corrupt ultra vires bargain" and "illegal political favor[s]." According to the plaintiff, his brother sold drugs across the street from Landers's law office with Landers's tacit permission. (ECF No. 2 ¶ 112.) Landers defended Paul when he was arrested, which marked the onset of Landers's reign of "undue influence" over Paul. (*Id.* ¶ 113.) The plaintiff speculates that Landers may have "blackmailed, implicitly coerced, threatened, or duped" Paul by threatening to reveal Paul's sealed criminal record, but does not explain what Landers coerced Paul to do. (*Id.* ¶ 118.) The plaintiff goes on to note that "as a former Queens A.D.A., John Landers, operated within the web of Queens County's corruption, that included Donald Manes, and Serph Maltese, as colleagues from that state government office." (*Id.* ¶120.) However, the plaintiff does not describe a single instance in which Landers—who died in 2012—had corrupt dealings with anyone in municipal or state government. Instead, the plaintiff argues Landers's must have been corrupt because he worked for the Queens County District Attorney's Office; according to the plaintiff, informants affiliated with that office were the source of leaks that precipitated the 1978 Lufthansa Heist at Kennedy Airport. (*Id.* ¶120-21.)

The plaintiff does not identify a plausible motive for the plot. Indeed, his mother lived for 20 years after the alleged plot's inception. Because these allegations are so patently specious and illogical, further discussion is not required. The plaintiff has not alleged joint activity or conspiracy between the Private Defendants and any state or municipal actors. Accordingly, his § 1983 claims against Paul Giordani, the Law Offices of John T. Landers and Horwin Realty Inc. are also dismissed entirely. "Complaints alleging nothing more than vague and general allegations of conspiracy are properly dismissed." *Stewart*, 851 F. Supp. 2d at 445; *see also Palmer v. City of New York*, 19-CV-5542, 2021 WL 4480572, at *10 (E.D.N.Y. 2021) ("merely

conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a §1983 claim against the private entity") (internal quotation marks and citations omitted).[9]

### b. The plaintiff's *Monell* claim for municipal liability against the City of New York is legally and factually frivolous.

The City of New York has not appeared in this action. Although the plaintiff claims that he served the City, he has not filed proof of service. (ECF No. 15 at 2.)

In any event, "[d]istrict courts have inherent authority to 'dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee.'" *Bryan v. Fleetbank, N.A.*, No. 21-2143, 2022 WL 6832280, at *1 (2d Cir. Oct. 12, 2022) (quoting *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000)). "An action is frivolous if it lacks an arguable basis in law or fact—that is, where it is 'based on an indisputably meritless legal theory' or presents 'factual contentions [that] are clearly baseless.'" *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). For the reasons explained below, the plaintiff's claim against the City of New York is both factually and legally frivolous.

In order to sustain a claim for relief under 42 U.S.C. § 1983 against municipal defendants like the City of New York, a plaintiff must show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the

---

[9] The plaintiff states that he served the Law Offices of John T. Landers on February 7, 2022. (ECF No. 15 at 3.) As noted above, John Landers, a solo practitioner, died in 2012. (ECF No. 16-1 at 8.) Paul Giordani states that Landers's firm "ceased to operate after his death. (*Id.*) According to the plaintiff, however, Landers's daughter Anne continues to operate the firm. (ECF No. 9 at 1.) The Court assumes for the purposes of this decision that Landers's firm still exists. The plaintiff also states that he served Horwin Realty Inc. through the New York Secretary of State of on February 8, 2022. (ECF No. 15 at 3.) The plaintiff has not filed proof of service for either Horwin Realty Inc. or the Law Offices of John T. Landers, and neither entity has appeared to date. In this case, however, their appearances are unnecessary because "[d]istrict courts have inherent authority to 'dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee.'" *Bryan v. Fleetbank, N.A.*, No. 21-2143, 2022 WL 6832280, at *1 (2d Cir. Oct. 12, 2022) (quoting *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000)).

14

deprivation of a constitutional right. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978). The plaintiff's allegations regarding municipal custom "rise to the level of the irrational or the wholly incredible," and can only be described as "fanciful" and "fantastic." *Adio-Mowo v. Heinemann*, 94-CV-5616, 1995 WL 313146, at *2 (E.D.N.Y. May 15, 1995) (internal quotation marks omitted).

As explained above, the plaintiff alleges that unnamed city officials conspired with private commercial interests to open a beer garden in violation of the city's zoning ordinances, which was an unconstitutional taking of his mother's property. (ECF No. 2 ¶ 2.) According to the plaintiff, the "special interests [that operate the beer garden] have been illegally protected by government officials under color of authority." (*Id.* ¶ 3.) The plaintiff also alleges that "these continued government failures were at all relevant times the result of a top on down directive from those political forces and power brokers who run and actually control Queens County." (*Id.* ¶ 12.) Aside from the fact that these events—to the extent they can be understood—occurred about 25 years ago, the plaintiff does not say which City officials participated in this corruption scheme, nor does he describe any specific agreement between the operators of the beer garden and the municipal officials who enforce zoning regulations in New York City. Instead, the plaintiff describes historical examples of municipal corruption in Queens, and cites the movie *Goodfellas* for the proposition that the "cops, lawyers, judges and politicians were owned." (*Id.* ¶ 121.) "[M]ere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details." *See Triano v. Town of Harrison*, NY, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (dismissing plaintiff's *Monell* claims because they consisted of "little more than vague,

15

conclusory allegations that the Town permitted, tolerated, and covered up police abuses") (citing *Graham v. Cnty. of Erie*, No. 11-CV-605, 2012 WL 1980609, at *2 (W.D.N.Y. May 31, 2012))).

The beer garden scandal could not support a *Monell* claim in any event. "[T]he Second Circuit has held that there is no right to demand municipal official enforce the zoning laws." *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 707 (S.D.N.Y. 2011) (internal quotation marks omitted) (quoting *Gagliardi v. Village of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994). "Indeed, it long has been recognized that government officials retain wide discretion about enforcement decisions." *Id.* (citing *Heckler v. Chaney*, 470 U.S. 821 (1985)). In other words, "there is no due process right in enforcing the law against another person." *Schwasnick v. Fields*, No. 08-CV-4759, 2010 WL 2679935, at *6 (E.D.N.Y. June 30, 2010). Thus, the plaintiff has "no constitutionally protected property interest in the benefit of a Zoning Code violation being issued" by the City against the operators of the beer garden. *Nemeth v. Village of Hancock*, No. 10-CV-1161, 2011 WL 56063, at *4 (N.D.N.Y. Jan. 7, 2011) (holding that failure to enforce municipal zoning code against plaintiff's neighbor was not a constitutional violation).

Furthermore, even if the plaintiff's *Monell* claim was otherwise viable, it would be time-barred. The statute of limitations for a § 1983 action in New York is three years. *Philips v. Smith*, No. 19-CV-2019, 2021 WL 4224957, at *4 (S.D.N.Y. Sept. 15, 2021) (citing *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995)). "Under federal law, a claim arising under § 1983 'accrues,' meaning the statute of limitations starts to run, when the plaintiff 'knows or has reason to know of the injury which is the basis of his action.'" *Id.* (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002).

As mentioned above, the events giving rise to the plaintiff's *Monell* claim date back at least 25 years, when he commenced litigation in state court. Even assuming the plaintiff's claim

16

against the City did not accrue until his mother's death in 2017—which is not the case as a matter of law—the plaintiff would still have missed his window of opportunity by nearly two years.

## CONCLUSION

The Court has reviewed the plaintiff's voluminous filings carefully, and has determined that they are wholly frivolous and that his claims are without merit. The plaintiff's claims against the Department of Justice and New York State must be dismissed without prejudice because dismissal is based on lack of subject matter jurisdiction, but his claims against the Private Defendants and New York City are dismissed with prejudice. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

                                              s/Ann M. Donnelly
                                              ANN M. DONNELLY
                                              United States District Judge

Dated: Brooklyn, New York
          December 7, 2022